UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD VERNON CHAMBERLIN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Case No. 19-10412

Stephanie Dawkins Davis
United States District Judge

**OPINION AND ORDER ACCEPTING AND ADOPTING
THE MAGISTRATE JUDGE'S JANUARY 31, 2020
<u>REPORT AND RECOMMENDATION (ECF No. 19)</u>**

## I.   BACKGROUND

On February 11, 2019, plaintiff Ronald Vernon Chamberlin filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (ECF No. 1). The court referred the matter to Magistrate Judge Patricia T. Morris, who recommends denying Chamberlin's Motion for Summary Judgment, granting the Commissioner's Motion for Summary Judgment, and affirming the Commissioner's final decision denying benefits. (ECF No. 19). Chamberlin has filed timely objections to the Magistrate Judge's recommendation, and the Commissioner has responded to those objections. (ECF Nos. 20, 21). Chamberlin's objections are currently before the Court.

## II. STANDARD OF REVIEW

When timely objections to a magistrate judge's report and recommendation are filed, a district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*. A district judge is not required to review any portion of a report and recommendation to which an objection has not been made. *Thomas v. Arn*, 474 U.S. 140, 149 (1985). *See also McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (citation omitted) ("[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.").

In conducting this *de novo* review, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

### III. ANALYSIS

Chamberlin makes three objections to the Magistrate Judge's Report and Recommendation. He argues that (1) "[t]he Magistrate Judge's finding that the ALJ was legally capable of determining function on this record without guidance from a professional opinion should be rejected;" (2) "[t]he Magistrate Judge's finding that the ALJ adequately noted Plaintiff's hurdles to non-conservative treatment should be rejected;" and (3) "[t]he Magistrate Judge's finding that Plaintiff's constitutional challenge was untimely should be rejected." (ECF No. 20).

### A. Objection #1

First, Chamberlin objects to the Magistrate Judge's determination that the ALJ did not err in assessing Chamberlin's RFC related to his right shoulder impairment without the guidance of a medical opinion. To support this objection and his underlying Motion for Summary Judgment, Chamberlin relies on *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017), which provided that an ALJ "must generally obtain a medical expert opinion when formulating the RFC unless the medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a commonsense judgment about functional capacity." (citations and internal quotation marks omitted). The Magistrate Judge addressed Chamberlin's reliance on *Gross* in her Report and Recommendation:

> Plaintiff's discussion of *Gross* is incomplete and glosses over caveats; as *Gross* notes further, "the social security statute does not contemplate a bright line rule requiring the ALJ to base his or her RFC finding on a physician's opinion." *Id*. at 829 (discussing 20 C.F.R. § 404.1527(d)). Further, as *Gross* clarifies, a reviewing court should look to whether the ALJ's decision "'provide[s] an accurate and logical bridge between the evidence and the result.'" *Id*. at 829-30 (*quoting Pollaccia v. Comm'r of Soc. Sec.*, No. 09-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6. 2011)). And, as Judge Linda Parker recently noted in *Woodard v. Saul*, No. 18-11099, 2019 WL 4565119, *4 (E.D. Mich. Sept. 20, 2019), *Gross* states that "there are likely instances in which an ALJ can formulate an RFC without the aid of opinion evidence." *Gross*, 247 F. Supp. 3d at 830.

(ECF No. 19, PageID.721-722).  The Magistrate Judge continued:

> Moreover, while Plaintiff cites a swath of cases from other Circuits, the Sixth Circuit has consistently and explicitly rejected the argument that an ALJ *must* elicit a medical opinion in promulgating an RFC. *See Gant-Holmes v. Comm'r of Soc. Sec.*, No. 18-cv-12264, 2019 WL 3282741, at *2-3 ([E.D. Mich.] July 22, 2019)[;] *Tucker v. Comm'r of Soc. Sec.*, 775 Fed. App'x. 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached."); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018); *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) (noting that an ALJ acted within her authority when she developed an RFC even though no medical source opined that the Plaintiff was capable of light work); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the

medical and non-medical evidence").

(ECF No. 19, PageID.722-723). The Magistrate Judge discussed the "host of treatment notes" relied on by the ALJ in formulating Chamberlin's RFC and determined that they were not so complicated as to require the interpretation of an expert. She concluded that in light of the evidence, the applicable case law, and the fact that Chamberlin failed to carry his burden of providing evidence to prove otherwise, the ALJ did not err in forming Chamberlin's RFC without the guidance of a medical opinion and the ALJ's conclusions were supported with substantial evidence. (ECF No. 19, PageID.720-723).

Chamberlin acknowledges the limits of *Gross* in his objections, but despite those limits and the Sixth Circuit case law cited by the Magistrate Judge, Chamberlin continues to rely on *Gross* by arguing that "just because there exist cases in which an ALJ might be able to determine an RFC without an opinion does not mean that this is such a case." (ECF No. 20, PageID.736). As the Commissioner asserts (ECF No. 21, PageID.741), Chamberlin's objection in this regard largely rehashes the arguments that he made in his Motion for Summary Judgment and his reply brief in support thereof; however, Chamberlin specifically objects to the Magistrate Judge's assertion that "although Plaintiff contends the evidence about Plaintiff's range of motion are too complex to be understood by a layman, this court has recently opined that 'full range of motion and normal

strength are not complicated medical findings in need of expert interpretation.'" (ECF No. 20, PageID.735 (quoting ECF No. 19, PageID.723 (quoting *Callahan v. Comm'r of Soc. Sec.*, No. 17-14069, 2019 WL 2218825, at *9 (E.D. Mich. Feb. 4, 2019)))).

Chamberlin argues that evidence of 5/5 strength, +2 reflexes, and excellent range of motion does not explain to the ALJ how much work activity he can perform on a regular and continuing basis. Chamberlin continues that while the ALJ found that he could "frequently push, pull, and use hand controls and reach with the right upper extremity," Michael Walsh Morand, PA-C, stated that he had good range of motion but difficulty lifting anything out away from his body or over his head. He argues that range of motion does not equate with an ability to lift. Chamberlin further asserts that the various factors inhibiting his shoulder surgery, like his age, obesity, and the fact that the surgery would improve his pain but worsen his motor function, show that this is not a case in which the medical evidence is so clear or undisputed that an ALJ can assess the RFC without a medical opinion. (ECF No. 20, PageID.736-737).

It is well settled that in arriving at a claimant's RFC, the Commissioner must base the decision on "all of the relevant medical and other evidence." 20 C.F.R. § 416.945. The Regulation does not require that the Commissioner rely on a physician's RFC finding or any other particular piece of evidence. Moreover, as

the Magistrate Judge pointed out, *supra*, the Sixth Circuit has been clear that the ALJ does not need to rely on a medical opinion in formulating the RFC. (ECF No. 19, PageID.722-723 (citing cases)). Nevertheless, courts have admonished ALJs, as non-physicians, to exercise caution in evaluating raw medical data to extrapolate what a claimant can and cannot do. *See Ali v. Comm'r of Soc. Sec.*, No. 15-14483, 2017 WL 726665, at *11 (E.D. Mich. Jan. 20, 2017), *report and recommendation adopted*, No. 15-14483, 2017 WL 712899 (E.D. Mich. Feb. 23, 2017) ("Courts in this circuit have regularly noted that, while it is for the ALJ to weigh the medical evidence, ALJs are not qualified to interpret raw medical data, and may not 'play doctor.'"); *Klump v. Colvin*, No. 14-12428, 2016 WL 2747143, at *4 (E.D. Mich. Apr. 26, 2016), *report and recommendation adopted sub nom. Klump v. Comm'r of Soc. Sec.*, No. 14-12428, 2016 WL 2986366 (E.D. Mich. May 24, 2016) ("When determining a claimant's RFC, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.") (quotation omitted).

Contrary to Chamberlin's assertion, this is not an instance in which the RFC is based on the ALJ's own interpretation of raw medical data. Much of the evidence that the ALJ reviewed was not complicated diagnostic and/or highly-specialized medical data that requires professional training to interpret (e.g. MRIs, ultrasounds and other mechanized diagnostic testing). Rather, the ALJ considered

a large amount of objective medical findings that can be translated into functional limitations, even by a lay person.

Here, the ALJ discussed 2013 and 2014 examination records that showed decreased abduction and adduction in Chamberlin's right shoulder; a note from one of Chamberlin's treating medical providers that his shoulders appear to be the least of his problems; a May 6, 2013 examination finding of 5/5 motor strength in the upper and lower extremities; a January 13, 2015 note from Michael Walsh Morand, PA-C that Chamberlin had good function in terms of range of motion but difficulty lifting anything out away from his body or over his head; a June 2015 treatment note reflecting full strength and a little pain with abduction; 2016 and 2017 examination findings of 5/5 strength in the upper and lower extremities, no rigidity or spasticity, normal coordination, and 2+ reflexes in the upper and lower extremities; and a March 30, 2017 treatment note from Michael Yee, M.D., who found that Chamberlin had an excellent range of motion and no pseudoparalysis in his right shoulder.  The ALJ also considered the conservative treatment that Chamberlin received for his right shoulder impairment, like pain medication, as well as the opinions of multiple providers that Chamberlin was not a good candidate for a reverse total shoulder arthroplasty because he was much too active, he had an excellent range of motion, and the surgery would improve his pain but worsen his motor function.  The ALJ further noted that Chamberlin's providers

recommended alternative treatment like physical therapy or a procedure to fix the rotator cuff tear, for the latter of which Chamberlin would first need to reduce his weight. (Tr. 33-34).

The Court agrees with the Magistrate Judge that the findings regarding Chamberlin's strength and range of motion and the conservative treatment recommended by his medical providers are relatively straightforward and do not require expert medical interpretation to determine that Chamberlin can perform a limited range of sedentary work. Since the objective findings consist of much more than "raw medical data," the ALJ did not cross over into the impermissible zone of interpreting raw medical data and extrapolating functional limitations therefrom. Additionally, to the extent that PA-C Morand's statement that Chamberlin had good function in terms of range of motion but difficulty lifting anything out away from his body or over his head could be considered opinion evidence, the ALJ considered that statement and appears to have applied it in part to the RFC by limiting Chamberlin to only frequent pushing, pulling, and reaching, with no lifting overhead or to shoulder height with the right upper extremity. (Tr. 30, 33-34, 35). Accordingly, the Court finds no error in the ALJ's review of the evidence and assessment of the RFC, even though there is no medical opinion in the record that directly supports the RFC.

B.     Objection #2

Next, Chamberlin objects to the Magistrate Judge's finding that the ALJ adequately noted his hurdles to non-conservative surgical treatment for his right shoulder impairment. (ECF No. 20, PageID.737). As noted above, the ALJ discussed the treatment that Chamberlin received for his right shoulder. The ALJ also considered and discussed the fact that three different medical providers advised against a reverse total shoulder arthroplasty because Chamberlin was too young, much too active, and still had a good-to-excellent range of motion, and because the surgery would improve his pain but worsen his range of motion. The ALJ further noted that one of those providers recommended an alternative procedure to repair Chamberlin's rotator cuff tear but indicated that Chamberlin would need to lose weight before proceeding with that procedure. (Tr. 33-34).

Chamberlin admits that "the ALJ does give a nod to the facts," but he argues that the ALJ "did not provide meaningful analysis or *substantial* evidence." (ECF No. 20, PageID.737 (emphasis in original)). Chamberlin overstates the standard in this regard. It is well settled that an ALJ is not required to discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (citation omitted). It follows, then, that an ALJ is also not required to

provide a "meaningful analysis" of every piece of evidence in the record for his decision to be supported by substantial evidence. As the Magistrate Judge determined, the ALJ accurately recited and considered the nature of the treatment Chamberlin received – and did not receive – for his right shoulder impairment. There is no error here.

C. Objection #3

Finally, Chamberlin urges the Court to reject the Magistrate Judge's determination that his Appointments Clause challenge is untimely. (ECF No. 20, PageID.737-738). Chamberlin's Appointments Clause challenge is based on *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), which held that ALJs of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause of the Constitution and, as such, must be appointed by the President, a court of law, or department head. *Lucia*, 138 S.Ct. at 2055. Chamberlin contends that since the ALJ in his case was not so appointed, his case should be remanded pursuant to *Lucia* for *de novo* review by a properly appointed ALJ.

In making her recommendation, the Magistrate Judge reasoned that, even assuming, *arguendo*, that *Lucia's* ruling extends to ALJs of the Social Security Administration, the Court in *Lucia* noted that a party must make a timely Appointments Clause challenge to be entitled to relief. (ECF No. 19, PageID.731

(citing *Lucia*, 138 S.Ct. at 2055)). She also recognized Chamberlin's reliance on out-of-circuit cases in which courts held that Social Security applicants do not forfeit their Appointments Clause challenges by failing to raise them at the agency level. But she accurately noted that most courts, including courts in this District, have held otherwise. The Magistrate Judge stated that Chamberlin's out-of-circuit caselaw did not convince her to reject the overwhelming authority to the contrary, and she therefore concluded that Chamberlin forfeited his Appointments Clause challenge, raised for the first time in his Motion for Summary Judgment, by failing to raise it below. (ECF No. 19, PageID.731-732).

Chamberlin continues to rely on out-of-circuit caselaw in his objections to the Magistrate Judge's Report and Recommendation. Specifically, Chamberlin cites a recent decision from the Third Circuit Court of Appeals, *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020). In *Cirko*, the Third Circuit held that claimants for Social Security disability benefits are not required to exhaust their Appointments Clause challenges before the ALJs whose appointments they are challenging because "the characteristics of the Social Security Administration (SSA) review process and the rights protected by the Appointments Clause favor resolution of such claims on the merits." 948 F.3d at 152.

The Commissioner acknowledges the Third Circuit's decision in *Cirko* but correctly points out that it is not binding precedent. The Commissioner also asserts that Appointment Clause challenges are subject to the normal rules of forfeiture and that the majority of courts nationwide, including those in the Sixth Circuit, are aligned with the position that Appointments Clause challenges to the Social Security Administration's ALJs not raised at the administrative level are untimely. (ECF No. 21, PageID.743-746 (citing cases)).

This Court is one of the majority of courts that has found that a social security claimant forfeits an Appointment Clause challenge by failing to raise it in the administrative proceedings. *Ramsey v. Comm'r of Soc. Sec.*, No. 17-13713, 2019 WL 2035595, at *11-13 (E.D. Mich. Feb. 25, 2019), *report and recommendation adopted sub nom. Ramsey v. Berryhill*, No. 17-13713, 2019 WL 1397241 (E.D. Mich. Mar. 28, 2019). The Court has considered *Cirko* in light of Chamberlin's objection and is not persuaded to change course. As the Commissioner notes, *Cirko* is not binding in this jurisdiction. Notably, a number of district courts, including two in this Circuit, have declined to follow *Cirko*, in favor of the majority view discussed above. *Honeycutt v. Saul*, No. 3:18-CV-509-CRS, 2020 WL 1430475, at *4 (W.D. Ky. Mar. 23, 2020); *Goins v. Saul*, No. 19-117-DLB, 2020 WL 1290784, at *10 (E.D. Ky. Mar. 18, 2020); *Gagliardi v. Soc. Sec. Admin.*, No. 18-cv-62106-BLOOM/Valle, 2020 WL 966595, at *3-6 (S.D.

Fla. Feb. 28, 2020); *Myers v. Comm'r of Soc. Sec.*, No. 1:19-cv-10010-ADB, 2020 WL 1514547, at *8-9 (D. Mass. Mar. 30, 2020); *Scheffert v. Saul*, No. C18-1031-LTS, 2020 WL 1505568, at *11 (N.D. Iowa Mar. 30, 2020); *Griffin v. Comm'r of Soc. Sec.*, No. 18-CV-85-LRR, 2020 WL 733886, at *10 (N.D. Iowa Feb. 13, 2020). Moreover, one of the findings in *Cirko* – that the nature of Appointments Clause claims does not favor issue exhaustion at the administrative level, 948 F.3d at 153-55, does not align with Sixth Circuit post-*Lucia* case law. While the Sixth Circuit has not opined on this issue in the social security context, it has repeatedly held that Appointments Clause claims are subject to exhaustion and forfeiture. *See Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 678 (6th Cir. 2018); *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256-57 (6th Cir. 2018); *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 754 (6th Cir. 2019), *reh'g denied* (Sept. 24, 2019); *Island Creek Coal Co. v. Young*, 947 F.3d 399, 402-03 (6th Cir. 2020). Accordingly, without further guidance from the Sixth Circuit or the Supreme Court, this Court maintains its position that a social security claimant's Appointments Clause challenge raised for the first time on judicial appeal is untimely and therefore forfeited.

## IV. CONCLUSION

For the reasons stated, the Court OVERRULES Chamberlin's objections (ECF No. 20), ACCEPTS and ADOPTS the Magistrate Judge's Report and

Recommendation (ECF No. 19); DENIES Chamberlin's Motion for Summary Judgment (ECF No. 12); GRANTS the Commissioner's Motion for Summary Judgment (ECF No. 16); and AFFIRMS the decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.

Date: May 8, 2020	<u>s/Stephanie Dawkins Davis</u>
Stephanie Dawkins Davis
United States District Judge